UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SHARON BINKLEY CASH,**

 **Plaintiff,**

v.             **CASE NO. 8:09-CV-985-T-17EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security Administration,**

 **Defendant.**
_____ /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the Act.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the

---

[1] The District Judge has referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## **Background**

On October 3, 2005, Plaintiff filed applications for period of disability, DIB, and SSI alleging disability beginning August 31, 2005. (T 15) Plaintiff's application was denied initially and upon reconsideration. (Id.) An administrative hearing was held on June 3, 2008. (Id.) Fifty-four years old at the time of the hearing, Plaintiff has a ninth grade education and past work experience as a cashier, a deli worker, and a certified nurse's assistant. (T 24, 458-59) At the time of her hearing, Plaintiff was also working part-time in the bakery department of Publix. (T 18)

On October 21, 2008, an ALJ denied Plaintiff's applications. (T 15-26) The ALJ found that Plaintiff's severe impairments included diabetes mellitus, obesity, and depression. (T 18) However, the ALJ concluded that these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (Id.) Plaintiff was determined to have a residual functional capacity ("RFC") to perform light work with some limitations. (T 20) After considering

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the testimony of a vocational expert ("VE"), the ALJ held that Plaintiff was unable to perform her past work but could perform work as a produce inspector, arcade attendant, and line inspector. (T 25) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period and denied Plaintiff's claim. (Id.) On April 30, 2009, the Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner. (T 3-5)

**Analysis**

Plaintiff contends that the ALJ erred by 1) determining Plaintiff retained the RFC for light work while failing to consider the impact of Plaintiff's obesity on her ability to work; 2) failing to consider the combined impact of Plaintiff's impairments; 3) discrediting Plaintiff's and her brother's testimony; and 4) posing an incomplete hypothetical question to the VE (Dkt. 17).

**I.    The ALJ's RFC Determination and the Impact of Plaintiff's Obesity**

Plaintiff argues that the ALJ's RFC determination is flawed because the ALJ failed to consider Plaintiff's mental and other non-exertional impairments. The ALJ found Plaintiff had the RFC to perform light work "with an occasional limitation for performing fine manual dexterity. She is able to perform routine tasks in an air-conditioned environment but will require a sit/stand option at her discretion. The Claimant is unable to perform any duties requiring acute vision." (T 20)

A claimant's RFC is the most the claimant can do despite any physical or mental limitations. 20 C.F.R. § 404.1545(a). The ALJ has the authority to assess a claimant's RFC. See Maffia v. Comm'r of Soc. Sec., 291 F. App'x 261, 263 (11th Cir. 2008) (per curiam) (unpublished); 20 C.F.R. § 404.1527(e). The ALJ's RFC determination must be "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a). A claimant's RFC should account for non-exertional limitations including, inter alia, difficulty functioning due to nervousness, anxiety or

3

depression; difficulty maintaining attention or concentration; or difficulty understanding or remembering detailed instructions. Id. at § 404.1569a(c)(1)(i)-(iii). An ALJ's RFC determination supported by substantial evidence may not be disturbed, even if the evidence preponderates against the decision. See Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (per curiam).

Plaintiff testified about trouble concentrating due to anxiety issues. (T 461) She claimed she had been reprimanded at work for her "mood swings" with customers (T 464), was chronically fatigued (T 468), and had racing thoughts that prevented her from sleeping. (T 472) Plaintiff was treated for depression and mood swings beginning in November 2006 (over a year after her alleged onset date) by psychiatrist H. Botros-Mikail, M.D. ("Dr. Botros-Mikail"). (T 227) Plaintiff reported no previous mental health admissions. (Id.) Dr. Botros-Mikail diagnosed Plaintiff with bipolar disorder and prescribed Lexapro and Abilify. (Id.) Two weeks later, Plaintiff reported the Dr. Botros-Mikail that "Lexapro is starting to help with her depression" and that "Abilify controls her mood swings and keeps her calm." (T 226) In January 2007, Dr. Botros-Mikail noted that Plaintiff was "doing well on her meds," was in a "good mood," and was able to sleep at night. (Id.) Plaintiff was "feeling irritable and depressed" in April 2007, according to Dr. Botros-Mikail's records, but after her medications were adjusted she reported feeling better "w[ith] good mood and good sleep at night." (T 225) In fact, in regular visits with Dr. Botros-Mikail through April 2008, Plaintiff reported good results from her medication and no further anxiety issues. (T 223-25)

The ALJ also noted that prior to Plaintiff's treatment with Dr. Botros-Mikail, her mood was described as "good." (T 22, 234-38) The ALJ emphasized Plaintiff's improvement on Lexapro and Abilify. (T 22) Additionally, the ALJ noted that Plaintiff's part-time job required interaction with customers, coworkers, and supervisors, did not involve absences due to mood swings or depression,

4

and that her employer did not limit her interaction with the public. (Id.) As no physician assessed any functional limitations due to Plaintiff's depression, the ALJ concluded that Plaintiff suffered only mild limitations in the areas of the activities of daily living, social functioning, and concentration, persistence, and pace. (T 19) The ALJ properly accounted for Plaintiff's mental limitations when he limited Plaintiff to "routine tasks." (T 20) See Harris v. Astrue, No. 3:07-CV-18-J32MCR, 2008 WL 728373, at *6 (M.D. Fla. Mar. 17, 2008) (finding RFC limiting claimant to simple tasks was consistent with moderate limitations on claimant's social functioning and ability to adequately maintain concentration and pace). Accordingly, the ALJ's failure to include additional mental limitations in Plaintiff's RFC was not error. Cf. Wood v. Comm'r of Soc. Sec., No. 6:09-CV-1090-Orl-GJK, 2010 WL 1408404, at *13 (M.D. Fla. Apr. 2, 2010) (holding that RFC determination was in error because ALJ found Plaintiff suffered from moderate mental limitations but failed to include those in RFC).

Plaintiff next contends that the ALJ improperly failed to include postural limitations in Plaintiff's RFC. Plaintiff testified that she dropped things often at work and could not bend down to pick up objects off the floor. (T 466, 471) Although Plaintiff argues that this testimony is "supported by the medical records on file" (Dkt. 17 at 9), she does not provide cites to any specific medical evidence corroborating her testimony. Moreover, the ALJ considered Plaintiff's testimony of foot and lower extremity pain in defining Plaintiff's RFC to include a sit/stand option limited to light work with a limitation on tasks requiring fine manual dexterity. (T 20) Plaintiff's argument that the ALJ did not consider her postural limitations is without merit.

Contending that the ALJ failed to consider the impact of her obesity on her ability to work, Plaintiff cites Social Security Ruling 02-01p, which recognizes that obesity can cause limitations

in sitting, standing, walking, lifting, carrying, etc. (Dkt. 17 at 7). The ALJ expressly referred to the ruling, however:

> Additionally, the medical evidence of record has documented the claimant's height as 5'6" with her weight recorded at 257 pounds. These measurements reflect a BMI of 41.48, which places the claimant in the classification of morbidly obese. Therefore, I note the potential effects that obesity can have on other systems, such as the musculoskeletal, endocrine, and cardiovascular systems. Thus, consistent with Social Security Ruling 02-01p, I will consider the combined effect of the claimant's obesity with her other impairments.

(T 18) Thus, the ALJ properly considered Plaintiff's obesity in determining Plaintiff's RFC. (T 20) Further, social security rulings are "agency rulings published under the authority of the Commissioner of Social Security," Sullivan v. Zebley, 493 U.S. 521, 530 n.9 (1990) (citations and internal quotation marks omitted), but do not bind this court. See Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2001) (per curiam) (unpublished). Significantly, none of Plaintiff's treating physicians imposed any functional limitations on Plaintiff due to her obesity. The ALJ's RFC determination is supported by substantial evidence.

## II. Combined Effect of Plaintiff's Impairments

According to Plaintiff, the ALJ failed to make "an explicit comparison as to how the Claimant's physical and mental impairments interact with each other." (Dkt. 17 at 12). Plaintiff's argument is conclusory and does not contain an analysis specific to the facts of this case.

The ALJ must consider each alleged impairment singularly as well as the combined effect of those impairments. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). The combined effect of impairments must be considered even where the impairments are not individually found to be severe. Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (per curiam). Where the ALJ does not comply with these requirements, the disability finding must be reversed and the case remanded.

Gibson, 779 F.2d at 623. Where the ALJ has provided an exhaustive discussion of the evidence, however, the court may conclude that the combined effect of a claimant's impairments has been considered. Jones v. Bowen, 810 F.2d 1001, 1006 (11th Cir. 1986) (per curiam).

The ALJ's decision reflects a proper consideration of Plaintiff's impairments that are supported by medical evidence in the record. The ALJ concluded at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (T 18) This language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. See Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (ALJ properly consider combined effect of impairments in finding that claimant is "not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity"). Plaintiff's argument that the ALJ disregarded her impairments in combination is rejected.

### III.    The ALJ's Credibility Determinations

Plaintiff asserts that the ALJ improperly discounted Plaintiff's complaints of pain and fatigue and did not examine the intensity, persistence, or limiting effect of Plaintiff's pain (Dkt. 17 at 3-5).

The Eleventh Circuit applies a three part "pain standard" when evaluating subjective complaints of pain. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). Under this standard, the plaintiff must produce (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the pain resulting from the medical condition, or (3) evidence that the condition is so severe that is can reasonably be expected to cause the alleged pain. Id.

When an ALJ declines to credit a claimant's testimony as to pain and other symptoms, the

7

ALJ must articulate explicit and adequate reasons for doing so. Id. at 1561-62. The ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (per curiam) (internal quotations and citations omitted). The reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence in the record. Foote, 67 F.3d at 1562. A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Id.

In this case, the ALJ made specific reference to the pain standard. (T 20) In finding Plaintiff's statements not fully credible, the ALJ relied on discrepancies between Plaintiff's description of her daily activities and her complaints of pain as well as the lack of corroborating medical evidence. (T 21-23) These inconsistencies are supported by the record.

For example, Plaintiff testified that she has carpal tunnel syndrome ("CTS") and painful neuropathy in her hands that causes her to drop things. (T 462) She has trouble lifting anything heavy but can "sometimes" lift a gallon of milk. (Id.) The neuropathy in Plaintiff's hands is a constant "tingling, numbness, sharp pain." (T 465) According to Plaintiff, this pain made it difficult for her to lift a coin from a table, for example, or to file papers. (Id.) Plaintiff characterized her 2006 CTS surgery was "a little bit successful" on her left hand but testified that her right hand was "worse" after surgery. (T 469)

However, following CTS surgery on her left hand, Plaintiff reported 95 percent relief of her symptoms and that she was feeling "excellent" and wanted surgery on her right hand. (T 194) Post-surgery reports by surgeon Jeffrey Stone, M.D. ("Dr. Stone") indicated Plaintiff had a full range of

8

motion. (T 192) After performing CTS surgery on Plaintiff's right hand, Dr. Stone likewise observed that Plaintiff "was able to flex and extend all fingers and oppose and abduct her thumb with gross motor exam intact." (T 211-12) These records undermine Plaintiff's credibility because they are inconsistent with Plaintiff's complaints of constant pain due to CTS and neuropathy in her hands. Nevertheless, giving Plaintiff the benefit of the doubt, the ALJ included in Plaintiff's RFC a limitation for performing tasks requiring fine manual dexterity. (T 20)

Back pain and shooting pain in her legs and feet also plagued Plaintiff, according to her testimony. (T 461) While alleging that she had difficulty driving because of the pain, she acknowledged driving five miles each way to work up to four times every week. (T 460) According to Plaintiff, pain makes it hard for her to walk or stand for long periods of time and caused her feet to swell. (T 465, 467)

Erick Grana, M.D. ("Dr. Grana"), who treated Plaintiff from October 2006 through August 2007, diagnosed Plaintiff with low back pain and diabetic peripheral neuropathy. (T 300) Dr. Grana noted that Plaintiff "gets good pain relief" with medication (Id.) In December 2006 and January 2007, Plaintiff's pain was "improving." (T 295-96) In August 2007, Dr. Grana observed that Plaintiff had no atrophy, edema, tenderness, muscle spasms, or trigger points and that she had a "normal" range of motion.[3] (T 290) Dr. Grana did not prescribe any medications during Plaintiff's August 2007 office visit and Plaintiff never returned. (Id.) Although medical records support Plaintiff's complaints of diabetic neuropathy in her legs and feet, no treating physician assessed any functional limitations due to Plaintiff's diabetes which was stable with few complications. (T 239,

---

[3] After treating Plaintiff in July 2007, Dr. Grana noted a decreased range of motion due to obesity, not a back problem. (T 291)

9

249, 256, 259, 261-62) Similarly, Plaintiff's painful toenails and the ulcer on her left foot responded well to treatment. (T 180-87)

Plaintiff also testified to blurry vision and problems with her memory and concentration. (T 461) Her treating physician Roger Gstalder, M.D. ("Dr. Gstalder") reported Plaintiff's acuity was 20/30 in her right eye and 20/25 in her left eye. (T 334) Dr. Gstalder noted age-related macular degeneration but no evidence of diabetic retinopathy. (Id.) In fact, as the ALJ acknowledged, Plaintiff's vision was corrected by progressive lenses. (T 21, 282) As for Plaintiff's complaints of memory and concentration problems, no physician assessed any functional limitations as a result of these alleged impairments. Due to these and other inconsistencies between the medical records and Plaintiff's testimony as to her limitations, the ALJ's finding that Plaintiff lacked credibility is supported by substantial evidence.

Plaintiff also submits that the ALJ erred in failing to assign weight to Plaintiff's brother's testimony. Specifically, Plaintiff argues that the ALJ mentioned the testimony but did not give specific reasons for discrediting it (Dkt. 17 at 5-6).

The ALJ is not required to make a specific credibility finding as to lay witness testimony if the ALJ's credibility finding as to the claimant sufficiently implies a rejection of lay witness testimony. See Osborn v. Barnhart, 194 F. App'x 654, 666 (11th Cir. 2006) (per curiam) (unpublished). Here, the ALJ characterized Plaintiff's brother's testimony as follows:

> Mr. Brinkley indicated that he thought the claimant had gained a lot of weight because she was unable to walk for exercise because of neuropathy. He added that she stumbles a lot and feels that she should not walk for long distances. Even though he testified that he thought she could only work for 15 to 20 minutes, he conceded that she works part-time at Publix. Mr. Binkley noted that when she returns home from work, she will eat and then lie down for awhile and take a nap.

(T 20-21)

The ALJ's credibility determination as to Plaintiff is properly supported, as discussed. Although the ALJ did not state explicit reasons for discrediting Plaintiff's brother's testimony, the ALJ's extensive discussion of Plaintiff's credibility was an implicit rejection of Plaintiff's brother's statements as to the extent of Plaintiff's impairments. Cf. Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (per curiam) (ALJ's implied credibility finding as to family member's testimony not sufficiently clear because ALJ failed to make credibility finding as to claimant).[4]

## IV.     Hypothetical Question

Finally, Plaintiff argues that the ALJ erred in posing a hypothetical question to the VE that omitted reference to Plaintiff's mental and other non-exertional limitations (Dkt. 17 at 9-11). Plaintiff cites case law supporting the principle that an ALJ must pose a complete hypothetical question to a VE but provides no supporting factual analysis (Id.). The court considers the argument nevertheless.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam). The ALJ is not required to include findings in the hypothetical that he properly finds are unsupported. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam). However, the ALJ must include limitations due to a claimant's severe impairments in the hypothetical. Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (per curiam).

---

[4] The ALJ also emphasized an inconsistency between Plaintiff's and her brother's testimony: "[Plaintiff] also testified that she was homeless and that is the reason she returned to work in September 2006, even though her brother testified that she had been living with him for the past three years (or approximately since some time in 2005)." (T 23)

11

Here, the ALJ asked the VE:

> Assume an individual of the same age, education and work experience as the claimant, has the following residual functional capacity, capable of light work with an occasional limitation for performing tasks requiring fine manual dexterity, also, from performing tasks requiring acute vision, but capable of performing routine tasks in an air-conditioned environment.... [L]et's put where sit/stand option is authorized too please.

(T 480-81) The VE responded that Plaintiff could not perform past relevant work but could perform work as a produce inspector, line inspector, and arcade attendant. (481) When asked by Plaintiff's attorney if Plaintiff could work as a produce or line inspector even though her RFC limited her to jobs that did not require acute vision, the VE responded that Plaintiff could inspect "larger parts such as bottles." (T 482) The ALJ acknowledged that the VE's testimony contained a qualification: "Mr. Harvey [the VE] testified that the DOT does not require acute vision for the occupations of produce or line inspector. Mr. Harvey further testified that his testimony is consistent with the information contained in the DOT ..." (T 25)

Plaintiff's suggestion that the ALJ should have posed a hypothetical addressing Plaintiff's mental impairments is unfounded as the ALJ's hypothetical included a limitation to routine tasks and the ALJ found that Plaintiff suffered only mild limitations as a result of her mental impairments. (T 19, 480) As discussed, this conclusion is supported by substantial evidence. The ALJ's hypothetical questions fully accounted for all of the impairments the ALJ found supported by the evidence.

## Conclusion

The decision of the Commissioner denying Plaintiff's applications for DIB and SSI should be affirmed. Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and this case dismissed, with each

party to bear its own costs and expenses; and

(2)  the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

**Dated: May 27, 2010**

*/s/ Elizabeth S. Jenkins*
ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attaching the factual findings on appeal. See 28 U.S.C. § 636(b)(1).